IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. 5:25-cv-222-BO-RJ

| | | |
|---|---|---|
| JENNIFER SLOAN RACHMUTH, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | **DECLARATION OF EDGAR HERNANDEZ** |
| ELLIOTT WARREN, et. al., | ) ) | |
| Defendants. | ) ) ) | |

I, Edgar Hernandez, declare under penalty of perjury as follows:

1. I am over 18 years of age, I am competent, and I am not otherwise under any disability. I have personal knowledge of the matters as set forth herein.

2. The statements in this Declaration are true and correct, to the best of my personal knowledge and belief.

3. I am a sworn law enforcement officer for the Town of Holly Springs ("HSPD") and have been at all times described in this Declaration.

4. I have received extensive law enforcement training. I completed Basic Law Enforcement Training. I have received additional training including training to be a Field Training Officer and Crisis Intervention Team training ("CIT"), along with yearly in-service training thorough the HSPD.

5. I was the primary Field Training Officer ("FTO"), for Officer Elliot Warren. Being an FTO involves training and supervising new law enforcement officers. This includes training

new officers how to conduct traffic stops, how to write reports, how to investigate crimes, along with any other tasks involved in being a law enforcement officer.

6.     On November 3, 2024, I became aware of an incident that had occurred at the Harris Teeter in Holly Springs on Sunset Lake Road. I learned that Officer Warren and Officer Marino, who was filling in for me as Officer Warren's FTO, had investigated this incident the previous day. Officers Warren and Marino obtained a warrant from the magistrate for Ms. Jennifer Sloan Rachmuth's arrest for cyberstalking.

7.     Before reviewing the warrant, I was not familiar with Ms. Rachmuth. I did not know that she was Jewish, nor did I know that she was an "independent journalist."

8.     Officers Warren and Marino gave me a brief synopsis of their investigation. They told me that they reviewed the elements handbook and spoke to Lieutenant Ottaway and Sergeant Bock, who confirmed that cyberstalking was an appropriate charge. I trusted Officers Marino and Warren's assessment, and my review of their investigation gave me no reason to doubt that cyberstalking was the appropriate charge.

9.     Officer Warren and I rode together in his patrol car to serve the warrant on Ms. Rachmuth at her residence at 112 Bellagio Drive, Apex, North Carolina. We parked down the street from her residence in an area that was not visible from Ms. Rachmuth's house.

10.     It is common practice to not park in front of the residence where the warrant is being served to not alert the person we are serving the warrant on of our presence. This is taught in Basic Law Enforcement Training and is primarily done for officer safety purposes in case the person decides to flee or fight upon seeing the officers approaching.

11.     I was wearing an HSPD-issued body worn camera ("BWC"), which captured an audio and video recording of us serving the warrant on Ms. Rachmuth. A true and accurate copy

of the recording captured by my body worn camera is attached hereto as **Exhibit 1**. All screen capture images in this declaration are taken from the recording captured from my BWC on November 3, 2024 at 112 Bellagio Drive, Apex, North Carolina, in Officer Warren's patrol vehicle on the way to the Wake County Detention Center, and at the Wake County Detention Center at 3301 Hammond Road, Raleigh, North Carolina.

12. Officer Warren, Officer Marino, and I approached the front door of Ms. Rachmuth's residence from the side of the house at approximately 10:28 a.m.

13. Officer Warren and I stepped onto the porch, and Ms. Rachmuth opened the door and came out onto the porch as Officer Warren stepped up to her door.

14. Officer Warren informed Ms. Rachmuth that there was a warrant for her arrest. I informed her that the warrant was in connection with the incident at Harris Teeter.

15. Ms. Rachmuth's husband, Guy Rachmuth stepped out onto the porch with her. I did not witness anyone else present at the home.

16. I asked Mr. Rachmuth if he could go into the house to get Ms. Rachmuth a pair of shoes because she was barefoot. Ex. 1 10:29:15-10:29:17.[1]

17. Ms. Rachmuth requested to change clothes, and I told Mr. Rachmuth that he could bring clothing for her.

18. I ordered Ms. Rachmuth to turn around and put her hands behind her back five times before Officer Marino came up onto the porch and informed her that we would explain more, but that she needed to cooperate. She then complied with the order.

19. Ms. Rachmuth placed her hands behind her back and Officer Warren was able to place her in handcuffs.

---

[1] The timestamps for the BWC footage refer to the "clock" time indicated near the upper right corner of the screen rather than the time elapsed from the beginning of the recording.



*Id.* 10:29:47-10:30:23

20. Officer Marino explained that Ms. Rachmuth's post about the victim, Ms. Amira Mohamed Abdel Fattah, made Ms. Fattah feel threatened and harassed, and that because the situation met the elements, she was being arrested for cyberstalking. *Id.* 10:29:47-10:30:10.

21. Mr. Rachmuth came out of the house with a pair of shoes and a sweater for Ms. Rachmuth.



*Id.* 10:30:32.

22. We allowed Mr. Rachmuth to assist Ms. Rachmuth by taking her necklace off.



*Id.* 10:30:35-10:30:46.

23. We informed Ms. Rachmuth that the magistrate had approved the warrant for her arrest for cyberstalking, finding that there was probable cause. *Id.* 10:30:40-10:30:45.

24. Ms. Rachmuth asked if she could bring her water because she had panic attacks and might need it. *Id.* 10:30:46-10:30:50. Officer Marino informed Ms. Rachmuth that she could bring a sealed water bottle with her.

25. Mr. Rachmuch went and retrieved a sealed water bottle from the house.



*Id.* 10:31:38.

26. Officer Marino asked Ms. Rachmuth if she needed anything else to bring with her other than her shirt and her phone, and she stated that she wanted to bring her wallet. I responded that we could bring that for her. *Id.* 10:31:19-10:31:26.

27. Mr. Rachmuth was unable to find Ms. Rachmuth's wallet. Ms. Rachmuth asked whether she would need her wallet and we stated that she would not, so she decided not to bring her wallet.

28. Officer Marino handed me Ms. Rachmuth's sweater and water bottle to bring with us to the Detention Center.



*Id.* 10:32:38.

29. At Ms. Rachmuth's request, Officer Marino stayed behind with Mr. Rachmuth so he could explain the situation and provide details about what would happen after Ms. Rachmuth arrived at the jail.

30. I asked Ms. Rachmuth if it was okay for us to cut through the side of her yard as it was a shorter route to get to where our patrol car was parked. She responded "yes, not a problem," and Officer Warren and I led her through the yard to the patrol car. *Id.* 10:32:04-10:32:08.

31. It took approximately one minute to walk from Ms. Rachmuth's front door to the patrol car which was parked at the next house down. I do not recall seeing any neighbors outside or watching from inside. *Id.* 10:32:40-10:33:33.

32. When we arrived at the patrol car, Officer Warren patted Ms. Rachmuth down to ensure that she didn't have any weapons. I explained to her why we were patting her down, and she stated, "not a problem, gotta be safe. *Id.* 10:33:32-10:33:29. Officer Warren then assisted her into the backseat of the patrol car.



*Id.* 10:33:34.

33.    I got into the front passenger seat of the patrol car with her sweater and water bottle and Officer Warren began driving to the Wake County Detention Center.



*Id.* 10:34:02.

34.    Several minutes into the drive, Ms. Rachmuch said something from the backseat that I couldn't identify. I let her know that I couldn't hear her very well. *Id.* 10:37:54-10:38:00.

35.     Ms. Rachmuth then asked why she was in handcuffs and I responded that she was in handcuffs because she was under arrest for cyberstalking and was being transported to the Wake County Detention Center. *Id.* 10:37:59-10:38:15.

36.     Ms. Rachmuth requested water. *Id.* 10:38:24-10:38:26. I responded that unfortunately we were unable to remove her handcuffs while we were in transport to the Detention Center. Because of the handcuffs and the partition between the front and back seats, I could not give her water during the drive. I explained that it was our policy that we had to have the person that we have detained in our custody in handcuffs and Ms. Rachmuth responded, "okay." 10:38:27-10:38:38.

37.     Ms. Rachmuth did not say anything else for the remainder of the drive, and we arrived at the Wake County Detention Center at approximately 10:56 a.m.

38.     During the drive, Ms. Rachmuth showed no signs of distress, and I do not recall her telling us that she was having a panic attack.

39.     I got out of the car with Ms. Rachmuth's sweater and water bottle and assisted her out of the car.

40.     When she was out of the car, I immediately assisted Ms. Rachmuth with drinking from her water bottle.

41.     I informed her that she would not be able to take the water bottle into the jail with her but assured her that there would be water fountains accessible to her inside the jail.

42.     Officer Warren and I then led Ms. Rachmuth into the Wake County Detention Center. When we arrived, we followed the procedures and filled out the necessary paperwork to process Ms. Rachmuth.

43.     After serving the arrest warrant, Officer Warren and I returned to the police department and he completed the Case Supplemental Report in accordance with department policy, documenting that the arrest warrant had been served. While he completed this, I sat next to him and reviewed the report when he completed it. I had no further involvement with the case.

44.     I later learned from Lieutenant Ottaway that the charges had been dropped by the District Attorney.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this **28th** day of July , 2026.

*Edgar Hernandez*
Edgar Hernandez (Jul 28, 2026 17:20:20 EDT)

**Edgar Hernandez**

# <u>Slip Sheet</u>

## *Declaration of Edgar Hernandez*

## *Exhibit 1*

*(Recording to be submitted manually and under seal with Court's leave)*